from the action. An appropriate order accompanies this opinion.

Anthony J. CARROLL, Plaintiff,

v.

DELAWARE RIVER PORT AUTHORITY, Defendant.

Civil Action 13–cv–02833

United States District Court, D. New Jersey.

Signed December 30, 2015

Matthew S. Wolf, Esquire, LLC, By: Matthew S. Wolf, Esq., 1236 Brace Road, B. 2nd Floor, Cherry Hill, New Jersey 08034, Counsel for Plaintiff

Deasey, Mahoney, Valentini, & North LTD, By: Carla P. Maresca, Esq., 80 Tanner Street Haddonfield, New Jersey 08033, Counsel for Defendant

## OPINION

HILLMAN, United States District Judge:

In this suit, Plaintiff Anthony Carroll brings two separate claims of military service discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act (USERAA), 38 U.S.C. § 4311(a).[1] He asserts that in 2010, and then again in 2012, he was passed over for promotions by his employer, Defendant Delaware River Port Authority (DRPA).

DRPA presently moves for summary judgment on both claims. Carroll opposes the Motion. For the reasons stated herein, DRPA's Motion for Summary Judgment will be denied.[2]

---

1. The Amended Complaint asserts three claims. Earlier in this suit, the Court dismissed as time-barred one of the claims. *See Carroll v. Delaware River Port Authority,* No. 13–2833, 2014 WL 116338, 2014 U.S. Dist. LEXIS 3167 (D.N.J. Jan. 10, 2014).

2. Carroll also cross-moves to exclude certain evidence that DRPA relies upon in its Motion

## I.

During all relevant times, Plaintiff Carroll was a reservist with the Pennsylvania Army National Guard. (Carroll Dep. p. 21–22; Pl's Ex. M)[3] In March, 2009, he was deployed to active duty in Iraq, and was involved in combat. (Carroll Dep. p. 44) During his tour, he suffered various injuries on different occasions, including traumatic brain injury, a torn calf muscle, a dislocated elbow, two torn rotator cuffs, and cervical spondylosis. (Carroll Dep. p. 23–24, 26, 44)

Carroll returned to the United States in December, 2009. From that time until November, 2013, he remained on active duty, recuperating from his injuries, first at McGuire Air Force Base, and later at his home in Narberth, Pennsylvania. (Carroll Dep. p. 28–29; Pl's Ex. M)

It is during this time period—while Carroll was residing in New Jersey and Pennsylvania, still on active duty but recuperating from his injuries—that he applied for the two promotions at issue.

In October, 2010, DRPA internally posted three openings for the position of Sergeant of Police. (Def's Ex. G) At the time, Carroll had been employed with DRPA for 22 years, and held the position of Corporal. (Def's Ex. I)

During February 2 and 3, 2011, eight candidates, including Carroll, were interviewed. (Def's Ex. I) Carroll was the only service-member among the group. (Id.)

After interviews were completed, DRPA created a memorandum, dated February 10, 2011, which detailed each applicant's education, work experience, and interview performance, and also assigned each candi-

date a rating. (Id.) Four applicants were rated "excellent"; one "very good"; and three "good." (Id.)

The fact of Carroll's military service was included in the February 10th Memorandum. Specifically, the memorandum states, in relevant part,

> Corporal Carroll's promotional interview was very professional. He spoke about his qualifications and supported those with examples from his experiences within the police department.... With a wealth of experience in both the DRPA PD and the U.S. Military, he has demonstrated an ability to adapt to any given situation.
>
> . . .
>
> *Summation:*
>
> Corporal Carrol has supervisory experience within the police department and within the U.S. Military. He should seek to improve on his supervisory skills by participating in a leadership course.... Corporal Carroll is assigned to Platoon # 1 at the Walt Whitman Bridge. He is currently on assignment with the U.S. Military.

(Def's Ex. I)

The memorandum rated Carroll "good;" the three applicants selected for the vacancies were all rated "excellent." (Def's Ex. I, J)

John Stief, who was a DRPA Captain at the time, was on the three-member panel that interviewed Carroll. (Def's Ex. I) Stief testified that, at the time of the interview, he knew Carroll had suffered "multiple injuries in Iraq," and recalled Carroll "stating that he needed multiple surgeries on his shoulders and he may have a broken

for Summary Judgment. In light of the disposition of the summary judgment motion, which is not dependent on the challenged evidence, the cross-motion will be denied as moot.

3. Carroll is now medically retired from service. (Carroll Dep. p. 22)

back, too." (Stief Dep. p. 60) When asked why Stief did not include that information in the memorandum, he testified, "I wasn't the only member of the interview panel that drafted this. I don't know the reason it didn't enter into the written assessment.... It could have been [an oversight]." (Stief Dep. p. 68)

Approximately a year and a half later, DRPA followed the same process when two more Sergeant vacancies occurred.

In October, 2012, DRPA internally posted the positions. (Def's Ex. P)

During November 9, 15 and 28, 2012, ten candidates, including Carroll, were interviewed. (Def's Ex. R) This time, Carroll was not the only active service-member who applied; one other U.S. Army reservist applied. (*Id.*)[4]

Just as before, DRPA created a comprehensive memorandum which evaluated each applicant who was interviewed. (Def's Ex. R) With regard to Carroll, the memorandum states, in relevant part,

*Work Experience:*

Corporal Anthony J. Carroll has excelled in all areas of the job as a police officer and supervisor within the DRPA. He is currently out of the department injured from military leave and has been for four years. Throughout his previous tenure as a Corporal, he had not only worked as the sole supervisor on his designated platoon, but he has also worked at all of the other DRPA/PAT-CO Facilities. That experience had allowed him to demonstrate his leadership skills in the daily performance of his duties.... During his career, he had established himself as a dependable officer.

*Interview:*

Corporal Carroll's promotional interview was very professional. He spoke about his qualifications and supported those with examples from his experiences within the police department.... He does have quite a bit of previous experience in both the DRPA PD and the U.S. Military, however being removed from the department and operational issues for several years, he did seem to answer several questions in a non-specific manner and did state his inability to work did not allow him to be more specific with some of his responses.

*Summation:*

Corporal Anthony J. Carroll has supervisory experience within the police department and within the U.S. Military.... Corporal Carroll is currently not on assignment, due to being injured during his tour with the U.S. Military, which occurred over four years ago. Due to his inactivity within our department, he does not appear to be a suitable candidate for the sergeant's position at this time.

(Def's Ex. R)

The memorandum rated Carroll "Currently, Not Suitable," "due to his lengthy absence from the department." (*Id.*) Carroll was not selected for promotion; the present record before the Court does not indicate who was selected. However, viewing the record in the light most favorable to Carroll, there is evidence from which a reasonable factfinder could conclude that non-active service members were selected. Stief testified that DRPA only selected for promotion applicants who received an "excellent" rating (Steif Dep. p. 52–53), and the other reservist in the interview group was rated "very good." (Def's Ex. R)

## II.

A court "shall grant summary judgment if the movant shows that there is no genu-

---

4. Two other applicants were identified as former service-members. (Def's Ex. R)

ine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir.1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Id.* at 249, 106 S.Ct. 2505.

## III.

Under USERRA,

An employer shall be considered to have engaged in actions prohibited ... if the person's membership ... [or] service ... in the uniformed services is a *motivating factor* in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership ... [or] ... service.

38 U.S.C. § 4311(c)(1)(emphasis added).

■ This statutory burden-shifting is applied in the following manner:

an employee making a USERRA claim of discrimination ... bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was a substantial or motivating factor in the adverse employment action. If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.

*Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed.Cir.2001); *applied by McMahon v. Salmond*, 573 Fed.Appx. 128 (3d Cir.2014); *Murphy v. Radnor Twp.*, 542 Fed.Appx. 173 (3d Cir.2013); *Hart v. Twp. of Hillside*, 228 Fed.Appx. 159 (3d Cir.2007) ("the District Court should have employed USERRA's burden-shifting framework, as enunciated in *Sheehan*, rather than the *McDonnell Douglas* framework").

■ Carroll's burden is relatively light; " 'military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.' " *Murphy*, 542 Fed. Appx. at 177 (quoting *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir.2005)).

■ On the other hand, DRPA's burden is heavier; "[the employer] must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service. This standard of proof is the 'but for' test." *Murphy*, 542 Fed.Appx. at 177 (citing *Sheehan* and *Coffman*). "[S]ummary judgment is appropriate where the employer's

evidence is so compelling and so meagerly contested that a trial would be a waste of time." *Id.* (internal citation and quotation omitted).

## A. "Motivating factor"

■ As to both the 2010 and 2012 positions, a reasonable factfinder could find that DRPA "took into account" or "considered" Carroll's military service. The DRPA's memoranda are evidence of that, and Carroll has thus raised an issue of fact for trial.

Rather than arguing otherwise, DRPA argues that Carroll cannot establish his *prima facie* case because he undisputedly was not physically able (i.e., qualified) to perform the duties of Sergeant. DRPA's basis for arguing that Carroll's qualifications come in at this first step of the analysis (as opposed to the second step) is Judge Irenas's previous opinion disposing of DRPA's Motion to Dismiss.[5]

In that opinion, Judge Irenas held that, to state a claim for failure to promote under USERRA, Carroll must "allege that: (1) he is a member of a protected class; (2) *he was qualified for the position at issue* ; (3) he was not promoted; and (4) Defendants filled the spot with a similarly situated applicant who was not of plaintiff's protected class." *Carroll v. Del. River Port Auth.*, 2013 WL 3465208 at *2, 2013 U.S. Dist. LEXIS 96059 at *6 (D.N.J. July 9, 2013) (emphasis added).[6]

Judge Irenas fully and thoughtfully discussed this "conceptually difficult issue" in a previous opinion. *Carroll*, 89 F.Supp.3d at 630. As he explained, there is a logical argument to be made for requiring a US-

ERRA plaintiff to plead (and then ultimately prove) that he was objectively qualified for the position he sought. *See id.* at 632 n.8. He also acknowledged, however, that *Sheehan* and Third Circuit precedent could be interpreted as conflicting with that conclusion. *Id.* at 632–633.

Ultimately, Judge Irenas did not have to decide the issue, insofar as Carroll argued that his lack of physical qualification was entirely irrelevant to the suit, which clearly is not the law, for the reasons Judge Irenas explained. *See id.* at 633 ("[Plaintiff's qualifications], of course, are relevant to the question of whether the employer acted for a nondiscriminatory reason.").

■ Now, however, it appears that the issue is squarely presented: In order to survive summary judgment, must a USERRA plaintiff raise a triable issue of fact as to whether he was objectively qualified for the positions for which he applied? The undersigned is bound to answer "no." The Third Circuit has clearly set forth the two-step legal standard to be applied. Of the two steps, Carroll's qualifications—or in this case, undisputed lack thereof—appear to fit into the second prong, not the first.

In order to establish a *prima facie* case at summary judgment, Carroll must only point to record evidence that his military status was a motivating factor in DRPA's decision. *Murphy*, 542 Fed.Appx. at 177. DRPA's argument that a USERRA plaintiff's objective qualifications should be part of the plaintiff's *prima facie* case is more properly directed to the Court of Appeals, who may consider the issue free from the

---

5. Senior United States District Judge Irenas passed away in October, 2015. The case was reassigned to the undersigned.

6. Judge Irenas acknowledged that his ruling was based on Title VII jurisprudence, not USERRA jurisprudence, because "after re-

peated and exhaustive research, the Court has not uncovered a single authority from any jurisdiction addressing the specific issue of pleading standards in a failure-to-promote discrimination suit under USERRA." *Carroll v. Del. River Port Auth.*, 89 F.Supp.3d 628, 632 n. 8 (D.N.J.2015).

procedural constraints placed on the District Court.

**B. DRPA's non-discriminatory reasons**

■ DRPA puts forth three non-discriminatory reasons why it would not have promoted Carroll, even in the absence of his military service. As already stated, the first is Carroll's physical inability to do the job. Second, as to the 2012 position only, DRPA asserts that it would not have selected Carroll because of an ongoing criminal investigation into Carroll's alleged misuse of his DRPA position.[7] Lastly, DRPA argues that its decision was based on Carroll's absence from the department because of his service-related injuries, which Judge Irenas previously held, is not actionable under USERRA.

As to the first two reasons, Carroll points to evidence calling these proffered reasons into question.

As to qualification, Carroll points to ample record evidence that DRPA makes qualification decisions *prior* to conducting interviews. (*See* Pl's Exs. C, E; Stief Dep. p. 53, 65; Forbes Dep. p. 38–39) He argues, and the undersigned agrees, that a reasonable factfinder could infer that DRPA had already determined that Carroll was qualified to be Sergeant when it granted him interviews, and could therefore conclude that DRPA's position now— that Carroll was not qualified—is unworthy of credence.

Additionally, the fact of Carroll's lack of physical qualification is notably absent from both interview memoranda.[8] Carroll should be allowed to argue to a jury that

this absence from the contemporaneous records of the non-selection decisions supports an inference that DRPA did not make its decision based on Carroll's lack of qualification.

Second, as to the criminal investigation, DRPA points to no evidence that any of the decisionmakers knew of the criminal investigation *at the time of* the non-selection decision. Indeed, the absence of any mention of the investigation in the interview memorandum, similar to the absence of any mention of Carroll's physical qualification, could support an inference either that (a) the decisionmakers did not know of the investigation; or (b) they did not base their decision on that fact.

Lastly, in reconsidering *Plaintiff's* previous Motion for Summary Judgment on the 2012 claim, Judge Irenas held that if a jury finds that DRPA denied Carroll promotions because of his absence due to service-related disabilities, Carroll's USERRA claim will fail. *Carroll,* 89 F.Supp.3d at 635 ("a reasonable juror could find that Defendant did not select Plaintiff for promotion because of his absences connected to his service-related disability, which this Court holds, is not actionable under USERRA.").[9] But the record evidence is equivocal, and the distinction between a denial based on military service absence and a denial based on a service-related disability absence is very subtle in this case. Viewing the record in the light most favorable to Carroll, a jury could find that DRPA denied Carroll promotions based on his absence due to mili-

---

**7.** It is undisputed that no charges were ever filed against Carroll.

**8.** The 2012 memorandum does reference Carroll's injuries and his medical leave, but at summary judgment the Court views this evidence in the light most favorable to Carroll. The memorandum does not explicitly state

that Carroll's injuries render him unqualified for promotion.

**9.** Judge Irenas left open the possibility that a cause of action might lie under other federal or state statutes, however, Carroll has never asserted any such claims. *Carroll,* 89 F.Supp.3d at 635 n. 13.

tary service, and not absence due to his service-related disabilities.

Carroll has raised triable issues of fact as to DRPA's asserted non-discriminatory reasons for non-selection. DRPA's evidence is not "so compelling and so meagerly contested that a trial would be a waste of time." *Murphy*, 542 Fed.Appx. at 177. DRPA's Motion for Summary Judgment will be denied.

## IV.

For the reasons stated above, DRPA's Motion for Summary Judgment will be denied and Carroll's cross-motion to exclude evidence will be denied as moot. An appropriate Order accompanies this Opinion.